DWORKEN & BERNSTEIN CO., L.P.A.
Patrick J. Perotti (OH #0005481)
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391

BONEZZI SWITZER MURPHY POLITO & HUPP CO LPA
Ronald A. Margolis, Esq.
1300 East 9th Street,  Suite 1950
Cleveland, OH  44114
(216) 875-2068

CROWLEY & CROWLEY
Noel C. Crowley (NC #3712)
20 N. Park Place, Suite 206
Morristown, New Jersey 07960
(973) 829-0550

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS
Gerald H. Baker
959 S. Springfield Ave.
Springfield, NJ 07081
(201) 659-2635

Attorneys for plaintiff
and putative class members

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA MARGOLIS, on behalf of herself and all others similarly situated, | CIVIL ACTION NO.: 2:11-cv-04355 (SRC-CLW) |
| Plaintiff, | |
| vs. | **FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| ATLANTIC COAST MEDIA GROUP LLC, et al., | |
| Defendants. | |
| And | |

THOMAS ALLAN SHIPLEY
37 Rodney Pl
Demarest, NJ  07627

And

MARKETING ARCHITECTS
110 Cheshire Ln #200
Minneapolis,  MN 55305

    New Party Defendants


    Plaintiff LISA MARGOLIS for herself and all others similarly situated, by her attorneys,

for her First Amended class action complaint against Defendants ATLANTIC COAST MEDIA

GROUP LLC, HYDROXATONE LLC, THOMAS SHIPLEY, AND MARKETING

ARCHITECTS, INC. states:

<u>**NATURE OF THE CASE**</u>

    1.    This lawsuit is brought by Lisa Margolis, individually and as a putative class

representative, against Atlantic Coast Media Group LLC, Hydroxatone LLC, and Thomas

Shipley (collectively, the "ACMG Defendants") and Marketing Architects, Inc. regarding

fraudulent billing practices, fraudulent advertising, deceptive trade practices, and breach of

contract.  The ACMG Defendants working with Marketing Architects sell skin-care products

directly to consumers on television, telephone, radio, print media and over the Internet by

uniformly advertised free trials. The 'free' trials are not.

    2.    Consumers who respond to the free-trial ads are instead enrolled in delayed-

billing, negative-option schemes that cost hundreds of dollars.

    3.    The ACMG Defendants also send, and bill consumers for, other products,

including vitamins, which the consumers did not order.

4. The ACMG Defendants' deceptive ads are approved by Defendant Shipley, the CEO of ACMG, and are prepared by Defendant Marketing Architects, which upon information and belief, receive a percentage of the sales based on its success in perpetrating this fraud on consumers.

5. By falsely presenting these marketing programs as free when they are not, and by further failing to disclose the terms and conditions of their delayed-billing, negative-option plan, all of the Defendants violate FTC rules and regulations regarding the use of the word free.

6. The marketing scheme also entirely misrepresents the product itself, falsely stating it is a "breakthrough" in skincare when it is not; falsely stating the product was created by a Dr. Fiorillo when that is untrue; and misleadingly stating that Dr. Fiorillo endorses the product, without giving the required disclosure that the doctor was compensated for the 'endorsement.'

7. Millions of persons across the United States have been defrauded by the Defendants' scheme. This lawsuit seeks to stop this illegal conduct and recover all of the money that Defendants wrongfully took from named Plaintiff Lisa Margolis and the class members.

<u>**PARTIES**</u>

8. Lisa Margolis is an individual residing at 483 Longspur Road in Richmond Heights, Ohio.

9. Defendant Atlantic Coast Media Group LLC ("ACMG") is a Virginia business entity with its principle place of business at 499 Washington Boulevard 15th Floor, Jersey City, New Jersey. Defendant ACMG is a marketing company which markets various products to consumers including skin creams, cosmetics and beauty supplies.

10.     Defendant Hydroxatone LLC is a Virginia business entity with its principle place of business at 499 Washington Boulevard 15th Floor, Jersey City, New Jersey.  Defendant provides consumers with products such as skin creams, cosmetics and beauty supplies.

11.     Defendant Thomas Shipley, a resident of New Jersey, is the founder and co-CEO of Defendant ACMG.  Shipley is not a dermatologist, cosmetologist, or degreed skin-care scientist.  He is product marketer whose background is in direct response marketing through online and offline media campaigns. He oversees the fraudulent marketing activities described in this complaint. He approved the Defendants' fraudulent marketing scheme involving purported free trial offers that were, in fact and known to him, delayed-billing, negative-option plans.  He approved Defendants' fraudulent scheme to obtain billing information from customers based on a misrepresentation that the information was being obtained for the purpose of collecting shipping and processing charges, when in truth the credit card billing information was collected to automatically bill the victim hundreds of dollars in the future without any further authorization.

12.     Defendant Marketing Architects, Inc. is a Minnesota corporation. It was directly involved in the drafting and implementation of the deceptive and fraudulent advertising campaign described in this Complaint by which the products are sold.

13.     It helped to prepareand provided the falsely worded scripts for ACMG's fraudulent ads; it provided the interactive voice response system that takes consumers "free-trial" orders and that obtains credit card information through false statements and without disclosing true terms and conditions; and, it produced the television and radio commercials, which promise a free product, when that is false.

14. Upon information and belief, Marketing Architects, Inc. receives a share of the compensation for every transaction they handle. This directly facilitates a million-listener, deceptive, false advertising campaign, from which it is directly compensated for results from its work and its compensation depends, in part, on the success of the described false marketing activity.

15. Marketing Architects has entered into a carefully structured relationship with ACMG, and has wide-ranging contacts with ACMG in New Jersey. Its marketing efforts on behalf of ACMG are regularly directed to New Jersey consumers, and, upon information and belief, it regularly processes free-trial orders from New Jersey residents.

## VENUE AND JURISDICTION

16. This court has diversity subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d), conferring Federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any defendant" and where, as here, the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs."

17. This court has personal jurisdiction over the parties. Plaintiff submits to the jurisdiction of this Court; Defendants ACMG and Hydroxatone LLC have their headquarters in this District; Defendant Thomas Shipley is a resident of New Jersey; and, Defendant Marketing Architects has continuing and wide-reaching contacts in New Jersey with ACMG and with New Jersey residents who respond to the Defendant's marketing efforts by placing free-trial orders through an interactive voice response system provided by Marketing Architects.

18. Venue is proper in this court pursuant to 28 U.S.C. §1391 because Defendants transact business in, contract to supply services in, are found within, and have agents in this

District, and caused injury or damage in this District by acts or omissions outside of this district while regularly doing and soliciting business in this district.

## FACTS

19.     The AGMG skincare and other products are marketed through free trials and risk-free trials. The Defendants use the terms interchangeably. Regardless of whether the offer is described as a free trial or risk-free trial, that representation is false.  Instead, the consumer is, in fact, signing up for a delayed-billing, negative-option plan.

20.     This violates the FTC requirement that "all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." 16 CFR 251.1.

21.     Instead, the Defendants did not disclose the billing, return, or use terms and conditions (upon which they now seek to justify charging hundreds of dollars for a 'free' product) in their marketing materials.  Defendants collected billing information without disclosing any aspect of their delayed-billing, negative-option scheme.

22.     The Defendants' marketing is further false and misleading, because it consistently represents these trial offers as having special value in terms of being free offers available only for a limited time:

- "We're releasing as many risk-free trials as we can in the next 24 hours."

- "[H]urry. Once this FREE offer's gone, it's gone."

- "For a limited time, try Hydroxatone before you buy it."

- "Find out how you can try Hydroxatone FREE for 30 days!"

- "[H]urry. Time is running out and risk-free trials are limited."

6

- "Call immediately to find out how you can try Hydrolyze FREE for 30 days!"

- "And we're GIVING AWAY as many RISK-FREE Trials as we can in the next 24 hours."

- "Hurry, supplies are limited."

23.     These "get it quickly before it's gone" tactics are well-established marketing methods to drive consumer behavior.  Used honestly, they are legitimate.  Used deceptively, they are consumer fraud.

24.     When the consumer calls the number, the (false) urgency is repeated, by Defendants stating: "you've called just in time to get one of our remaining trials"; "we're almost out of trials"; "we've set up this Hydroxatone Trial Order Line to give everyone who calls in time a Trial Reservation Code that matches them up with one of these remaining trials"; and "Your Trial Reservation Code is…[.]"

25.     In fact, all of these urgency statements in paragraphs 22 and 24 are purposely false.  The consumers are dishonestly led to believe they are calling about a special, limited availability offer when in truth these "limited" offers are always available, day after day and year after year.

26.     After repeatedly being 'primed' by the warning that this is a limited-time, offer, the consumers are all told they will receive their 30 day risk-free trial of product simply by paying a "small shipping and processing fee of 7.95."

27.     The customer's payment information (i.e., credit card number) is then collected to cover that fee.

28.     At the time when the credit card information is collected by Defendants, NONE of the terms and conditions of a delayed-billing, negative-option, autoship, automatic future credit card billing program, trial had been disclosed.

29.     The violation of the free requirements of law, and the fraudulent conduct, are practiced at least twice on each customer.

30.     Specifically, the subject products are marketed in one of three ways: a) by internet sale; b) by live telephone agent sale; and, c) by IVR sale (a computerized, interactive voice system which recites uniform scripts and uses response prompts).

31.     In the case of IVR sales, the consumer reaches the IVR system by dialing a toll-free number.

32.     The toll free number is provided to the consumer by the AMG Defendants through radio, television or print advertisements which are all substantially similar to the following:

> Are you a woman over 35? Do you want to visibly erase your winkles and look years younger? Then don't miss this special announcement. An exclusive anti-aging breakthrough called Hydroxatone will soon be available in retail stores across the country. But before it hits shelves, a limited number of free trials are being released to listeners in this area. For your free trial, call 1-800-900-9805. If lines are busy, please try again. This may be your final chance to try Hydroxatone for free! Clinically proven Hydroxatone tightens skin and makes wrinkles and fine lines disappear from view. The results are so impressive, it was given away in celebrity gift bags at this year's Emmy Awards. Take years off your appearance faster than you thought possible. This may be your last chance to try Hydroxatone risk free, so call now! Call in the next ten minutes and you'll also receive a free, full-size age-defying toner. Hurry, supplies are limited. 1-800-900-9805. 1-800-900-9805.
>
> Source:
> http://www.radioads.com/RadioAds.asp?ad=hydroxatone&CallLetters=WKDD-98.1-WONE-97.5&Market=akron&state=oh&AdID=21735

33. This advertisement does not contain terms or conditions about paying any more than shipping and handling; being required to cancel a subscription; or, being sent multiple months or products and being automatically billed for same in order to receive the free product to try for thirty (30) days.

34.  Plaintiff Lisa Margolis heard Defendants' advertisement for moisturizing cream.

35.  The advertisement stated that Plaintiff could receive for free a 30 day supply of product.

36.  Plaintiff called the number provided in the advertisement.

37.  The call was handled by an IVR system, without a live operator.

38.  The system handled the call in the following, exact manner:

    a.    The customer is told they have called for a 30-day risk-free trial of the product Hydrolyze.

    b.    The customer gives the address to which they want the risk free trial shipped.

    c.    The customer is told that to receive the risk free trial they must pay a small shipping processing fee of $7.95.

    d.    The customer is asked to say "yes" to indicate their agreement to these terms.

    e.    The customer is asked to select a payment option "to cover the shipping and processing charge."

    f.    The customer then provides their card information.

39.  At this point, through this exchange plaintiff entered a contract with Defendant ACMG for 30 days of the product for only $7.95 shipping and handling, with no other terms, conditions or requirements.

40.  At this point, Defendants had not disclosed or stated any other terms, conditions, or requirements to receiving 30 days of the product for only $7.95 shipping and handling.

41.  At this point, Defendants had not disclosed or stated: a) that the customer must return something or their credit card would be charged for the product; b) that the customer must pay the cost of return postage and send back the product; c) that the customer would receive not ONE month of the product but THREE months; e) that the customer's credit card would be automatically billed approximately $210 with no further authorization on the customer's part; f) that the customer would be 'auto-shipped' more product every three months, to eternity, and their credit card would be billed for every shipment; or g) that the customer would be sent vitamins or other product which they had not ordered.

42.  Instead of sending Plaintiff a single, 30-day free trial package of the product, defendant sent MULTIPLE packages of the product.

43.  The invoice sent with (or shortly after) that product shipment properly stated that Plaintiff had been charged $7.95 for shipping and handling, but improperly stated that Plaintiff's total charges were "$209.85 for the Hydrolyze Premium Beauty Program."

44.  Rather than being a free transaction for only "$7.95 for shipping and processing", the invoice set forth extensive charges:

> "On Jan. 09, 2011 you will be charged $69.97.
>
> "On Feb 08, 2011 you will be charged $69.94.
>
> "On Mar 10, 2011 you will be charged $69.94."

45.  The invoice further improperly stated that ACMG and/or Hydroxatone LLC "will ship a new shipment to you every 90 days" of the cream and that for those Plaintiff was being "billed on the same schedule," to wit, every month.

46.  Further, ACMG and/or Hydroxatone LLC  shipped Plaintiff three boxes of vitamins that Plaintiff did not request or contract for.

47.  When Plaintiff asked customer service why she received the vitamins, she was told: "the sample automatically comes out together, ma'am. That's an automatic thing in the package."

48.  ACMG and/or Hydroxatone LLC properly charged Plaintiff $7.95 on December 6, 2010 for shipping and handling.

49.  ACMG and/or Hydroxatone LLC *improperly* charged Plaintiff $3.95 on December 6, 2010 without Plaintiff's authorization.

50.  ACMG and/or Hydroxatone LLC improperly charged Plaintiff's credit card on January 4, 2011 for $33.95 and on January 10, 2011 for $69.97.

51.  Plaintiff contacted ACMG and/or Hydroxatone LLC on January 12, 2011 in an attempt to obtain a refund for the overbilling and to stop the charges, but was refused.

52.  ACMG and/or Hydroxatone LLC improperly charged Plaintiff's credit card on February 7, 2011 for $33.94, on February 9 for $60.94 and on March 11, 2011 for $69.94.

53.  All of the Defendants have acted in the same way toward all members of the class by obtaining customer credit card information, ostensibly for "shipping and processing only," through the pretext of a free-trial offer of skin product, but then issuing unauthorized billings on the credit card number obtained through fraud

54.  In addition to the deceptive and fraudulent practices referenced in previous paragraphs, the ACMG Defendants falsely represent in their marketing materials the efficacy, creation, and research and development of their products, directly to consumers through various media, including Internet, telephone, print, television and radio advertisements.  These Defendants represent in their marketing materials that their skincare products are a

"dermatologist tested breakthrough," and co-developed by a plastic surgeon. These statements are false.

55.   The ACMG Defendants also mislead the public by stating that the skincare products are endorsed by a plastic surgeon, without making the required disclosure that the plastic surgeon has a financial interest in the products, in violation of FTC rules to the contrary.


## CLASS ALLEGATIONS

56.   Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

57.   Plaintiff brings this action on behalf of herself and for all other persons similarly situated (herein collectively referred to as "Plaintiffs" or "putative class members") who:

> Participated through an IVR system in a free trial of any product from the ACMG Defendants, for payment of only shipping and processing;

> Provided a credit card or debit card number, and

> Were billed on their card by ACMG and/or Hydroxatone LLC more than shipping and processing, without subsequent written authorization to do so.

58.   This class numbers over forty (40) persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

59.   The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the entire class as a whole. Those questions include:

- Did Defendants use common, standardized advertisements to offer free trials of products to customers?

- Did Defendants use common, standardized IVR script to obtain credit card and debit cards numbers from customers who contacted the Defendants regarding free-trial offers?

- Did the Defendants represent that the only costs of the free trial were shipping and processing?

- Did the Defendants bill consumers for more than shipping and processing, without subsequent written authorization to do so?

- Did the Defendants send multiple packages of the free-trial products to the customers instead of the 30 day free trial that was offered for the cost of shipping and processing?

60.     Defendants have engaged in the same conduct regarding all of the other members of the class.

61.     The claims, defenses, and injuries of the representative Plaintiff are typical of the claims, defenses and injuries of the entire class, and the claims, defenses and injuries of each class member are typical of those of the entire class.

62.     Representative Plaintiff will fully and adequately protect and represent the entire class, and all of its putative class members.

63.     The identity of all members of this class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendants and others.

64.     The prosecution of separate actions by each member of this class would create a substantial risk of inconsistent or varying adjudications with regard to individual members of the class that would establish incompatible standards of conduct for the Defendants.

65.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Further, the

maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
(against Defendants ACMG and  Hydroxatone LLC)

66.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

67.     Plaintiff and Defendants ACMG and/or Hydroxatone LLC entered into a contract the terms of which were that Plaintiff agreed to pay a shipping and processing charge (of approximately $7.95) for a free trial of a an ACMG product and ACMG and/or Hydroxatone LLC agreed to provide a 30 day risk free trial supply of product on those terms.

68.     Plaintiff performed all conditions required of her under the contract, or her performance was waived.

69.     Plaintiff paid ACMG and/or Hydroxatone LLC for the shipping and processing of the free trial product by providing a debit or credit card number.  ACMG and/or Hydroxatone LLC ran the card and billed Plaintiff the $7.95.

70.     ACMG and/or Hydroxatone LLC breached the contract by then charging Plaintiff's card again for more than the $7.95 shipping and processing.

71.     ACMG and/or Hydroxatone LLC also breached the contract by sending Plaintiff more than the 30 days free trial package of the ordered product, and billing plaintiff's card for the extra product.

72.     ACMG and/or Hydroxatone LLC further breached the contract by automatically sending Plaintiff vitamins or dietary supplements that she did not order, and billing her card for same.

73.     As a direct and proximate result of ACMG and/or Hydroxatone LLC's breach of contract, Plaintiff has suffered damages.

74.     ACMG and/or Hydroxatone LLC have taken the same actions toward all members of the class who have likewise suffered such damages.

## SECOND CLAIM FOR RELIEF
### Fraud
**(against all Defendants, except B, C and D not against Defendant Marketing Architects)**

75.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

**A.     Free Trials Fraud and Billing for Unordered Products**

76.     Defendants represented to Plaintiff that the product she ordered was free and she would only be charged for shipping and processing.

77.     Further, Defendants represented that plaintiff was providing a credit or debit card number for use in paying the shipping and processing of that free product.

78.     Plaintiff relied on this representation in contracting with ACMG and/or Hydroxatone LLC for a free trial of moisturizing cream for $7.95 shipping and processing and in supplying them with her credit or debit card number to pay the shipping and processing charges for that product.

79.     This reliance was reasonable.

80.     The statements made by Defendants were knowingly false.

81.     Defendants' representation that Plaintiff would receive a free-trial offer and would only be charged for shipping and processing, and the statement the Plaintiff's credit card information was taken for payment of shipping and handling, was made falsely, with knowledge

of its falsity, or with utter disregard and recklessness as to whether this representation was true or false that knowledge of falsity may be inferred.

82.     Defendant Thomas Shipley, as co-CEO of ACMG and as the individual responsible for marketing the subject products, personally participated in establishing and creating the foregoing "free" marketing system including the fraudulent aspects discussed above, and he authorized the misrepresentations and omissions described above.

83.     At the time that Defendant Shipley approved the use of the fraudulent marketing materials regarding free trails, he knew of the misrepresentations and omissions contained in those materials and knew or had reason to know they were false.

84.     Defendant Marketing Architects co-authored the marketing materials and commercials containing the misrepresentations, and prepared them for broadcast. It also set-up its IVR system to use those false statements, and that fraudulent approach.

85.     Defendant Marketing Architects knew that the representations contained in the advertising materials were false through its management of ACMG's interactive voice response ordering system, and through its preparation of the scripts used in that system.

86.     Through its preparation of ACMG's advertising materials and implementation of its interactive voice response ordering system, Defending Marketing Architects actively and knowingly participated in the implementation of the fraudulent scheme involving untrue free-trial offers of the skincare products.  Further, it did so under a joint scheme in which it received a cut of every sale generated by use of the materials and system described above, which plaintiffs assert are false and unlawful.

87.     Defendants' representation that plaintiff was contacting it to obtain a free trial of skin moisturizer and was giving a credit or debit card number to be used for payment of the shipping and handling on that product was false.

88.     Defendants intended that Plaintiff would rely on its representations in order to get customers' payment information (credit or debit card number) so as to charge them <u>more</u> than proper, and for products that they never requested or ordered.

**B.     Misrepresentations Regarding the Efficacy and Development of the Product**

89.     The ACMG Defendants represented their products as a "dermatologist tested breakthrough!"

90.      This statement was false.

91.     The ACMG Defendants also represented that their products were "[c]o-developed by an internationally recognized expert on plastic surgery."

92.     This statement was false.

93.     Defendant Thomas Shipley has admitted this was a misrepresentation, and that the plastic surgeon was not involved in the formulation of the Defendants' products, yet Defendants continue to the present date to use the false statement in their ongoing, daily marketing campaign

94.     The ACMG Defendants intended customers to rely on the foregoing false statements, and the customers reasonably did rely on them, as material to their transactions..

**C.     Failure to Disclose Endorser's Financial Interest in the Products**

95.     Dr. Michael Fiorillo endorsed the Defendants' products.

96.     In exchange for his endorsement, Fiorillo was given a 10% equity interest in Hydroxatone LLC.

97.     The FTC requires the disclosure of any connection between the endorser and seller of a product that might materially affect the weight or credibility of the endorsement. As the FTC explains, if a physician endorses a product, "[c]onsumers are unlikely … to expect that the physician … owns part of the company[.]" 16 CFR 255.5 at Example 4.

98.     The ACMG Defendants never disclosed to consumers that Fiorillo had an ownership interest in Hydroxatone LLC. This omission was material.

**D.     Billing for Unordered Vitamins**

99.     The ACMG Defendants billed Plaintiff for vitamins that she did not order.

100.    When she asked why she received the vitamins, the ACMG Defendants' personnel admitted a common, company-wide practice to "automatically" include unordered vitamins with every shipment of skin care and related product.

101.    At the time the was entered into for the product, the ACMG Defendants intended to also send unordered and unauthorized vitamins and to improperly bill the named plaintiff and the class members' credit cards for same.

102.    The ACMG Defendants have acted in the same way toward all members of the class and they have similarly suffered damages.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
**(against all Defendants)**

103.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

104.    Defendants ACMG and/or Hydroxatone LLC billed Plaintiff for goods or services that Plaintiff never requested or ordered.

105.    Defendants retained the money that  obtained from Plaintiff through her credit or debit card using the fraudulent scheme described above.

106.    This money was collected from Plaintiff's account wrongfully, since Plaintiff did not request or order the products and did not authorize the charges.

107.    Defendants have been unjustly enriched through the receipt of revenue they otherwise would not have enjoyed.

108.    As a direct and proximate result of Defendants' acts, Defendants must disgorge all such unjust revenue and return it to Plaintiffs.

109.    Defendants have acted in the same way toward all members of the class and they have similarly suffered the foregoing harm.

### FOURTH CLAIM FOR RELIEF
**Sending Unordered Consumer Products**
**(against all Defendants)**

110.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

111.    The foregoing conduct by Defendants was taken in consumer transactions dealing with goods for personal, household, or family use, in which plaintiff and the class members were consumers and Defendants ACMG and/or Hydroxatone LLC were suppliers.

112.    The foregoing conduct by Defendants was sending to plaintiff and the class members product or goods that they did not order.

113.    Contrary to law, Defendants engaged in this conduct and obtained money from Plaintiff and the class members.

114.    Plaintiff and the class members are entitled to keep, without charge or cost, all product sent for which Defendants ACMG and/or Hydroxatone LLC do not have an order, and

Plaintiff and the class members are entitled to a refund of all moneys taken or received by any Defendant from plaintiff and the class members' credit cards for those unordered products, with interest and such other relief as permitted by law, including the common law and statutes of all states where Defendants have engaged in this practice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

1.  For an Order determining at the earliest possible time that this matter may proceed as a class action under Fed. R. 23 and certifying this case as such;

2.  For compensatory damages;

3.  For punitive damages;

4.  For reasonable costs and attorney fees;

5.  For such other or further relief as this Honorable Court deems Plaintiff and the class entitled.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff and the putative class members hereby demand a jury trial of this action in the number of 8 jurors.

Respectfully submitted,


DWORKEN & BERNSTEIN CO., L.P.A.
Patrick J. Perotti (OH #0005481)
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391

RONALD A. MARGOLIS, Esq.
Bonezzi Switzer Murphy Polito & Hupp Co LPA
1300 East 9th Street,  Suite 1950
Cleveland, OH  44114
(216) 875-2068

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS
Gerald H. Baker
959 S. Springfield Ave.
Springfield, NJ 07081
(201) 659-2635

CROWLEY & CROWLEY
Noel C. Crowley (NC #3712)
20 N. Park Place, Suite 206
Morristown, New Jersey 07960
(973) 829-0550

By: */s/ Noel C. Crowley*

Attorneys for Plaintiff

Dated:  September 7, 2012